IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RASHAD K. RICHMOND,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:19 -CV-01096-MAB |
| | ) |
| **STEPHEN KESSLER, ET AL.,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendants Josh Crawford, Brian Dasch, Galen Dellinger, Kory Hinterscher, Stephen Kessler, Brian Livingston, and Trevor Stanley (Docs. 26, 27). Plaintiff filed a response to Defendants' motion for summary judgment (Docs. 29, 30). For the reasons set forth below, Defendants' motion for summary judgment will be granted.

## BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 4, 2019 for deprivations of his constitutional rights while he was incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1). After a threshold review, pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on three separate counts against Defendants:

**Count 1:** Hinterscher sexually abused Plaintiff in violation of the Eighth Amendment.

>**Count 2:** Hinterscher, Crawford, Kessler, and Dellinger used excessive force on Plaintiff in violation of the Eighth Amendment.
>
>**Count 3:** Stanley, Dasch, and Livingston were deliberately indifferent to Plaintiff's injuries and his inability to eat in violation of the Eighth Amendment

(Doc. 9, p. 3-4).

Defendants filed their motion for summary judgment on June 30, 2020, arguing that Plaintiff failed to exhaust administrative remedies before filing this action (Docs. 26, 27). Plaintiff filed a response on July 13, 2020 (Docs. 29, 30). Soon after, on July 16, 2020, Plaintiff filed a motion for information, requesting documents from Defendants (Doc. 31). The Court granted that motion, and ordered Defendants to provide Plaintiff with the mail logs from Hill Correctional Center ("Hill") as they could pertain to the issue of exhaustion (Doc. 32). The Court noted, however, that Defendants are all employees of Lawrence and may not have access to these records, even if the records exist (*Id.*). Defendants responded on September 4, 2020 and provided Plaintiff with copies of the Hill mail log, which only includes the number of pieces of outgoing legal mail, but does not include who the mail is sent to or when the documents are sent (Doc. 35).

An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on October 7, 2020 (Doc. 39).   Plaintiff was the only witness who testified at the hearing.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). Accord *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving.

*Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or

---

[1] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

### FACTUAL BACKGROUND

Plaintiff claims that on July 11, 2019, Defendant Hintersher sexually abused him by grabbing his groin and penis (Doc. 1, p. 9). According to Plaintiff, he asked Defendant Hinterscher what he was doing and he indicated that he was performing a search procedure and then grabbed Plaintiff's penis again (*Id.*). Plaintiff requested to be placed in the shower and make a Prison Rape Elimination Act ("PREA") call.

According to Plaintiff, he informed Defendants Crawford, Kessler, and Dellinger that he was just sexually abused and wanted to make a PREA call. Plaintiff contends Defendant Dellinger refused, informed him he was taking him back to his cell, and that

these Defendants used excessive force on him, bending his arms, twisting his wrists, and pulling on his arms and fingers as Plaintiff grabbed ahold of the railing to prevent them from taking him to his cell. They were successful in moving Plaintiff to his cell and while in his cell, according to Plaintiff, they continued to use excessive force. Plaintiff contends that he was shoved, grabbed, placed in a chokehold, wrapped in chains at one point, and ultimately passed out (Doc. 1, p. 10). Plaintiff was taken to the healthcare unit, treated, and released by Dr. Pittman after he determined that his vitals were stable, but Plaintiff contends that Dr. Pittman did not check Plaintiff for injuries. Plaintiff was placed on crisis watch by mental health professional Zollar after she was informed by the correctional officers that Plaintiff said he was going to kill himself (*Id*. at 11). While Plaintiff was on crisis watch, he claims he asked Defendants Stanley, Dahs, and Livingston for medical care on numerous occasions, but they refused. *Id.*

Plaintiff was incarcerated at Hill when he filed this lawsuit (Doc. 27, pp. 1-2). Defendants contend that there are no records of Plaintiff ever filing a grievance for the issues in his case, which occurred on or around July 11, 2019 (*Id.* at 2). Defendants' records show that Plaintiff filed a single grievance after July 11, 2019, which referenced a separate incident than the one described by Plaintiff in his complaint because that incident occurred on or around July 23, 2019. *Id.* In support of their motion, Defendants submitted the Administrative Review Board ("ARB") IGRV log, which shows all of the grievances received by the ARB for a particular offender. Plaintiff's IGRV log shows that he submitted a grievance on or around July 8, 2019 (Doc. 27-3, p. 1). The note on this grievance states it is related to "collusion." *Id.* This record also indicates that Plaintiff

submitted a grievance dated August 4, 2019, related to staff conduct involving "Thompson, Rutherford, and…" an additional name that was cut off, but appears to start with the letter "H," none of whom appear to be Defendants in this matter. *Id.* Neither of these two grievances appear to have any relation to this case and Plaintiff acknowledged as much during his testimony at the *Pavey* hearing. In fact, Plaintiff was specifically asked whether any of the grievances contained in the IGRV log pertain to the issues in this case and he answered no.

Plaintiff contends that he did not file any grievances while at Lawrence following the incident because he was on suicide watch and did not have access to any items other than a suicide blanket (Doc. 29, p. 1). Plaintiff describes that he requested access to his belongings on or around July 23, 2019 so he could start the grievance process, but he was not granted access since his belongings were packed for his transfer to another facility. *Id.*

Plaintiff was transferred to Hill on July 24, 2019 and had to wait approximately ten days to receive his personal belongings. *Id.* Plaintiff contends after he was granted access to his personal belongings, he filed a grievance for both incidents (the shower and assault). *Id.* Notably, Plaintiff omits any mention of submitting a grievance regarding the issues related to his claim for deliberate indifference (Count 3). Plaintiff explains he filled out two separate grievances and put them in two separate envelopes on the same day, August 4, 2019, and mailed them directly to the ARB because the incident he described occurred at Lawrence and not Hill, where he was incarcerated at the time (*Id.* at 2). Plaintiff testified that when a prisoner grieves an issue that occurred at a different prison,

he is allowed to send his grievance directly to the ARB, which Defendants agree is the appropriate procedure.[2]

At the *Pavey* hearing, Plaintiff testified that even though he placed two grievances in the mail system, he only received a response to one of them, which was unrelated to the issues in the present matter. That response, a letter dated August 29, 2019, is in the record. Sherry Benton acknowledged that the ARB received his grievance dated August 4, 2019 on August 8, 2019 (Doc. 30, p. 1). Ms. Benton notes that Plaintiff submitted a grievance regarding the conduct of certain staff members at Lawrence, including Rutherford, Thompson, Hannah, and Lt. Dixon, none of whom are Defendants in this case. *Id.* The letter details that Plaintiff alleged the above-mentioned staff members left him in the shower for a total of six hours, out of retaliation for prior PREA claims Richmond filed. *Id*. Ms. Benton detailed that the ARB decided to remand the grievance back to the CAO of Lawrence to have his claims reviewed. Ms. Benton sent a second letter to Plaintiff, dated September 17, 2019, detailing that after review, Plaintiff's claims were not substantiated and the grievance was denied (*Id.* at 2).

## DISCUSSION

At the *Pavey* hearing, Plaintiff specifically acknowledged that none of the grievances in the ARB's IGRV log pertain to the issues in this case. Ultimately, Plaintiff's testimony focused on the fact that he believed correctional officers at Hill learned of his

---

[2] Defendants submitted Lacie Livingston's declaration in support of this assertion. Ms. Livingston is a Grievance Officer at Lawrence Correctional Center and includes the grievance policy in which a prisoner may write to the ARB directly when housed at a separate facility from the one at which the incident occurred (Doc. 27-4, p. 2).

encounter on July 11 with correctional officers at Lawrence and, because of this, destroyed his grievance. But Plaintiff offered no explanation why that grievance was purportedly destroyed but not his other grievance that clearly did reach the ARB (*See* Docs. 27-3; 30). Ultimately, Plaintiff's case hinges on the argument that he submitted two grievances on August 4, 2019 and the one that grieved the conduct outlined in Counts 1 and 2 of this case went missing and the one that had *nothing* to do with this case did *not* go missing. The Court is skeptical. Plaintiff acknowledged he received a response from the ARB regarding the August 4, 2019 grievance that is not related to this case, but then never followed up with anyone regarding the purported grievance he submitted that same day regarding the issues in this case. Plaintiff ultimately admitted that he filed this lawsuit in October without following up in any manner because he was about to be released from prison.

During the *Pavey* hearing, Plaintiff's story shifted over time. Plaintiff acknowledged that legal mail must be sealed so that staff who receive it or deposit it cannot review the contents. So when questioned on how or why one of his grievances would have been discarded and the other would not have, he speculated that prison staff members may have opened his mail and discarded this second grievance. But Plaintiff's story later shifted, and he testified that he may have forgotten to seal his grievance.

Ultimately, Plaintiff's story is speculative, inconsistent, and implausible in light of all the record evidence. Plaintiff, by his own admissions and testimony, has not exhausted with respect to Count 3. And Plaintiff simply has no reasonable explanation why correctional officers at Hill would choose to discard one grievance against Lawrence staff

pertaining to the issues in this case (Counts 1 and 2) and not discard another grievance against Lawrence staff, which is not relevant to this case. The documentary evidence all supports the Defendants' position that Plaintiff failed to exhaust his administrative remedies. Accordingly, the Defendant's motion for summary judgment will be granted.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants (Doc. 26) is **GRANTED**. This case is **DISMISSED without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 9, 2020**

                                                 **s/ Mark A. Beatty**
                                                 **MARK A. BEATTY**
                                                 **United States Magistrate Judge**